# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-cr-00312-KJD-VCF |
| Plaintiff, | |
| v. | **ORDER** |
| LAQUAN MCDONALD, | |
| Defendant. | |

This matter is before the Court on Defendant Laquan McDonald's Emergency Motion for Temporary Release Under 18 U.S.C. § 3142(i) Due to COVID-19 Pandemic (ECF No. 22), filed on March 30, 2020. The Court ordered a response be filed by April 1, 2020. (ECF No. 23). The Government timely filed its Response (ECF No. 24) on April 1, 2020. The Court finds this matter appropriately resolved without a hearing.

## I. BACKGROUND AND PROCEDURAL HISTORY

### a. Original Detention Decision

On December 4, 2019, a federal grand jury returned a one-count criminal indictment charging Defendant with felon in possession of a firearm. (ECF No. 1). On December 5, 2019, Defendant appeared before the Court for his detention hearing and the Court ordered Defendant detained pursuant to 18 U.S.C. § 3142, based on a finding that no condition or combination of conditions would reasonably assure both Defendant's appearance as required and the safety of any other person and the community, and by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance. (ECF No. 13). The Court included the following reasons for detention: Defendant's prior criminal history; participation in criminal activity while on probation, parole, or supervision; history of violence or use of weapons; history of alcohol or substance abuse; lack of stable employment; lack of

financially responsible sureties; prior failure to appear in court as ordered; and, prior violations of probation, parole, or supervised release. (*Id*. at p. 2-3).

On December 6, 2019, Defendant filed a Motion to Reopen the Detention Hearing. (ECF No. 6). Defendant requested release to his uncle's home. On January 6, 2020, the Court denied Defendant's request for release and detained him pending trial. (ECF No. 18).

### b. Temporary Release Arguments

Now, in the instant Motion, Defendant requests not reopening of his detention hearing, but temporary release. (ECF No. 22). Defendant makes a number of arguments in favor of his temporary release. First, he argues that the Fifth Amendment requires his release because COVID-19 presents a significant harm outweighing the Government's interest in confinement. Specifically, he claims that the current conditions of confinement create an unreasonable risk of exposure to COVID-19 and do not provide the necessary personal hygiene supplies to protect him. (ECF No. 22, p. 12-13). Defendant also claims that COVID-19 testing is not being offered to inmates or him specifically.

Second, Defendant argues that the Eighth Amendment prohibition against cruel and unusual punishment compels release. He contends that unreasonable risk of COVID-19 contradiction violates the Eighth Amendment and amounts to deliberate indifference to his health. (ECF No. 22, p. 13-16).

Third, Defendant argues that the Bail Reform Act requires his release as the circumstances have changed due to Defendant's asthma creating a heightened health risk during this pandemic and release is necessary to his defense. (ECF No. 22, p. 16-17). He acknowledges that he has not had any recent asthma attacks at Nevada Southern Detention Center (NSDC). (*Id*. at p. 18). Defendant claims there are conditions of release available that ameliorate the danger he may pose to the community. He proposes residing with his girlfriend and children while on GPS location monitoring. (*Id*.) Further, Defendant argues that he is not safer in prison during this pandemic due to some reported cases of COVID-19 in prisons across the country and believed shortage of sanitary supplies.

The Government responds that the Court should deny the Motion for several reasons. First, release is not necessary to Defendant's defense. It contends that Defendant's attorney is permitted contact visits at NSDC at this point, but even if she becomes restricted to telephone and video conference calls to prepare his defense, that would not unnecessarily hamper his ability to prepare his defense. Further, the Government argues that if Defendant was released, his counsel would not necessarily want in person meetings and the Court has already limited in person court appearances. Finally, the trial has been continued to July 13, 2020, which leaves a long preparation period for him and his counsel.

Second, there is no compelling reason for release pursuant to Section 3142(i). The Government argues that Defendant has not demonstrated that he is at high risk of becoming severely ill from COVID-19, that his risk of contracting COVID-19 in custody is significantly higher than his risk if released, or that NSDC is unequipped to provide medical treatment if he becomes infected. The Government contends that NSDC has protocols in place to combat infectious diseases in the prison population. Additionally, the Government highlights that Defendant merely claims he was diagnosed with asthma as a child and did not provide any further medical information to verify the severity of his condition and why it would make him high risk. The Government also underscores discovery in this case produced video clips of Defendant smoking.

Third, the Government argues that Defendant merely asserts because he has an available place to live and due to his asthma, which he has not had an attack since 2018, his risk of nonappearance and danger to the community will be mitigated in light of the speculative prospect of a COVID-19 outbreak at NSDC. To the contrary, the Government claims Defendant is a poor choice for release due to him being a flight risk with no financial ties to this community, lack of lawful employment since 2005, his criminal history, his gang affiliation, and is facing a parole violation sentence in California. Further, the Government highlights that location monitoring is no longer an option given social distancing and it would put pretrial officers at risk. Also, Defendant would not be permitted to remain in Las Vegas if released as he would be required to be transferred to California for violation parole and detained in a facility in California.

## II. LEGAL STANDARD

The Bail Reform Act of 1984 mandates that every person charged with a federal offense be given a detention hearing. 18 U.S.C. § 3142(a). If the Court finds the defendant poses a danger to public safety or a flight risk, the Court may order the defendant detained pending trial. 18 U.S.C. § 3142(f). Section 3142(i) permits a judicial officer to "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Courts have used this provision "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).

A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *United States v. Clark*, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020); *see also United States v. Buswell*, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). Most courts addressing a motion for temporary release under § 3142(i) have done so in the context of evaluating the necessity of the defendant assisting with preparing his or her defense. *Clark*, 2020 WL 1446895, at *2; *see, e.g., United States v. Cecerle*, 2014 WL 31674, at *4 (D. Nev. Jan. 3, 2014); *United States v. Dupree*, 833 F.Supp. 2d 241, 247 (E.D.N.Y. 2011); United States v. Jeffries, 2011 WL 182867, at *4 (E.D.Tenn. Jan. 20, 2011); *United States v. Hazelwood*, 2011 WL 680178, at *3 (N.D. Ohio Feb. 16, 2011). Courts considering whether pretrial release is "necessary under § 3142(i) have considered: (1) time and opportunity the defendant has to prepare for the trial and to participate in his defense; (2) the complexity of the case and volume of information; and (3) expense and inconvenience associated with preparing while incarcerated. *Cecerle*, 2014 WL 31674, at *4.

Relatively little guidance exists about what qualifies as a "compelling reason" for temporary release under § 3142(i). Some courts have considered a defendant's serious medical condition compelling. *See, e.g., United States v. Rebollo-Andino*, 312 Fed.App'x 346, 348 (1st Cir. 2009) (noting that defendant could seek temporary release under § 3142 for medical reasons).

Courts typically grant relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see e.g., United States v. Scarpa*, 815 F.Supp. 88 (E.D.N.Y. 1993) (permitting the defendant's release under the 24-hour guard of the U.S. Marshal Service at his own expense because of traumatic gunshot injury and terminal AIDS diagnosis and correctional authorities could no longer manage his medical conditions); *United States v. Cordero Caraballo*, 185 F.Supp. 2d 143, 144-47 (D.P.R. 2002) (ordering release of defendant who sustained multiple gunshot wounds, was partially paralyzed, could not walk, lost some arm function, who required the supervision of 4-5 contracted security guards on a daily basis, where Bureau of Prisons could not provide required medical care).

### III. DISCUSSION

The Court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents, particularly within the jail and prison setting. The rate at which COVID-19 is spreading and affecting communities around the world is alarming. Governor Steve Sisolak declared a State of Emergency in Nevada on March 12, 2020. Nevada's K-12 schools have been closed since March 16, 2020. Most unprecedented, casinos have announced complete closure of their properties. On March 20, 2020, Nevada's governor issued an order closing all non-essential business to the public and pleading for individuals to stay in their homes.

This Court has also taken measures to protect the public, staff, and litigants. *See* General Order 2020-02 and Temporary General Orders 2020-03 and 2020-04. The DOJ also announced it may investigate and prosecute individuals who intentionally spread the virus, referred to as a "biological agent" and potentially implicating terrorism-related statutes. However, no cases have been reported at NSDC, located in Pahrump, Nevada, which is where Defendant is currently detained.

#### a. Constitutional Basis for Temporary Release

Defendant bases his temporary release request, in part, on the Fifth and Eighth Amendments to the U.S. Constitution. In evaluating whether a condition of pretrial detainment violates the Fifth Amendment, the question is whether the condition amounts to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The United States Supreme Court has stated that if a particular condition or

restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. *Id*. at 539; *see also Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (applying same rule). Thus, the question before this Court is whether detaining Defendant is reasonably related to a legitimate government objective.

This Court finds that Defendant's detention is reasonably related to legitimate government interests, namely, protecting the community and ensuring his appearance at trial as outlined in its original detention order. (ECF No. 13). The Court does not find that any of the grounds for detention have changed. The recent COVID-19 pandemic does not change the analysis under the Fifth Amendment's Due Process Clause.

Similarly, the Court does not find that the analysis under the Eighth Amendment supports temporary release given all of the grounds for detention and no evidence that NSDC is unable to provide sufficient medical treatment to Defendant in light of him contracting COVID-19 in custody. There is also no evidence that Defendant has a higher risk of contracting COVID-19 in custody than when released, as proposed, to meet the deliberate indifference to medical needs standard. Therefore, the Court does not find any constitutional basis supports Defendant's temporary release request.

### b. Bail Reform Act Basis for Temporary Release: Compelling Reason or Preparation of Defense

A defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *Clark*, 2020 WL 1446895, at *3. Instead, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary. *Id*. The Court will evaluate the following four factors: (1) the original grounds for Defendant's pretrial detention; (2) the specificity of Defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to Defendant; and (4) the likelihood that Defendant's proposed release would increase COVID-19 risks to others. *Id*. The

Court will not necessarily weigh these factors equally, but will consider them in their entirety to determine whether a "compelling reason" exists such that temporary release is necessary in the instant case. *Id.*; § 3142(i). Here, all of the factors relevant to the Court's analysis of the compelling reason basis for temporary release weigh in favor of denying release.

### i. The Original Grounds for the Defendant's Pretrial Detention

The Court finds that the grounds for its detention decision still apply. There has been no change to the following reasons that the Court relied on for its original detention decision: Defendant's prior criminal history; participation in criminal activity while on probation, parole, or supervision; history of violence or use of weapons; history of alcohol or substance abuse; lack of stable employment; lack of financially responsible sureties; prior failure to appear in court as ordered; and, prior violations of probation, parole, or supervised release. (ECF No. 13, p. 2-3).

### ii. The Specificity of the Defendant's Stated COVID-19 Concerns

Moreover, the Court agrees with the Government that Defendant's stated COVID-19 concerns are not specific enough to pass the line beyond pure speculation. He generically claims to have asthma, but without any asthma attack since 2018. The Court fails to find that a compelling reason for temporary release. Defendant submits no specific COVID-19 risk; rather, his arguments are too speculative or generalized to favor release. *See Sanders*, 2020 WL 1528621, at *5 (motion for temporary release denied where defendant asserted no specific personal health risk factor).

Further, Defendant cannot predict the extent to which COVID-19 cases might arise at NSDC. Nor can he predict the extent to which he may be exposed to the virus if allowed to live in Las Vegas. Defendant also cannot predict how NSDC might respond to an outbreak any more accurately than many Americans can predict how their local hospitals might respond. While inmates may not be able to fully adhere to optimal social distancing guidelines, these circumstances are generalized to all individuals in the prison system and are not unique to Defendant. The Court, however, "cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee." *United States v. Fitzgerald*, 2020 WL 1433932, at *2 (D.Nev. March 24, 2020).

Moreover, the Court does not agree with Defendant's conclusory statements that NSDC is not utilizing proper protocols to ensure a COVID-19 outbreak does not occur. In fact, there are no reported COVID-19 cases at NSDC. There is also no evidence that NSDC does not have the proper sanitation supplies or medical treatment ready if Defendant were to contract COVID-19. As such, Defendant's speculation that his asthma alone is enough to make him high risk is a fatal flaw to his request for temporary release.

### iii. The Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate the Defendant's Overall COVID-19 Risks

Additionally, the Court finds that Defendant's proposed release plan to be on GPS monitoring at his girlfriend's home fails to mitigate his flight risk and danger to the community. Defendant offers no evidence to explain how the proposed living situation mitigates the risk of infection. For example, Defendant fails to explain who else has or will live in or frequent the home or identify any screening practice or concrete COVID-19 precautions taken there. Defendant therefore offers nothing more than mere speculation that home detention would be less risky than detention at NSDC, which has screening practices and other reasonable COVID-19 precautions in place.

Defendant also fails to address the risk of exposure while en route from NSDC in Nevada to California. As the Government underscores, Defendant would not be permitted to remain in Las Vegas as he would need to be transferred to California for the parole violation he is facing. Defendant does not address, once there, the capacity of California's health care system to provide him with adequate treatment if Defendant were to contract the virus.

In contrast, if Defendant remains at NSDC, he has access to medical care should he become ill. NSDC has ample motivation to prevent any outbreak and, even if an outbreak occurs, to contain and manage it for the well-being of all involved. The record is void of information suggesting NSDC would be unable to render appropriate medical treatment to Defendant if he became ill. To the contrary, the Court is convinced that NSDC has established a comprehensive plan to manage the facility during the pandemic. Thus, the Court finds that Defendant's unexplained, conclusory allegations regarding NSDC's inability to manage the care of inmates

during the pandemic does not rise to the level of justifying temporary release based on COVID-19 concerns.

### iv. The Likelihood that Defendant's Proposed Release Plan Would Increase COVID-19 Risks to Others

Finally, the likelihood of Defendant's proposed release increasing COVID-19 risks to others is high. There are no assurances that Defendant would comply with the Governor's shelter in place order and not violate conditions of release, as Defendant has in the past. *See Clark*, 2020 WL at 1446895, at *7. Given the Section 3142 considerations discussed previously, the Court believes Defendant will likely violate any conditions of release it may impose if it were to issue a temporary release order. As another Court recently observed, "[w]hile the location monitoring that [defendant] proposed may offer useful information about where he is, it provides little useful information about what he is doing." *United States v. Martin*, 2020 WL 1274857, at *4 (D.Md March 17, 2020). Here, Defendant has been unable or unwilling to remain law-abiding in the past. The Court has no reason to believe he would suddenly become compliant now.

Furthermore, supervising a high-risk offender out in the community will place Pretrial Services officers at a heightened risk of contracting the virus. "[L]ocation monitoring is not a limitless resource, nor is its installation and monitoring by the United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given current recommendations regarding implementation of social distancing." *Id*. For all of the reasons previously summarized regarding Defendant being a flight risk and danger to the community, it is highly likely that the Court would need to expend resources to apprehend him when temporary release period ended and the Court does not find GPS monitoring to be a viable option at this time.

In conclusion, Defendant has not established a compelling reason sufficient to persuade the Court that temporary release is necessary. None of the factors that the Court considered weighed in Defendant's favor. Defendant's arguments regarding the risk of outbreak at NSDC are nonspecific to him and are speculative at best. Indeed, Defendant's generalized arguments about risk apply equally to every detainee at NSDC. Additionally, Defendant has failed to

demonstrate that his proposed release plan would alleviate his overall COVID-19 risks. The Court further finds that Defendant's proposed release plan would place Pretrial Services officers at risk in supervising him and, when the temporary release inevitably ends, other law enforcement officers and the facility would be placed at risk in re-apprehending Defendant after he has had ample opportunity for contamination. Therefore, Defendant has failed to demonstrate a compelling reason for temporary release.

### v. Necessary for Preparation of the Defense

The Court also does not agree that Defendant's temporary release is necessary for the preparation of his defense. Courts considering whether pretrial release is necessary for preparation of defense have analyzed: (1) the time and opportunity the defendant has to prepare for the trial and participate in his defense; (2) the complexity of the case and volume of information; and (3) expense and inconvenience associated with preparing for trial while incarcerated. *Cecerle*, 2014 WL 31674, at *4. These typical considerations, however, are not necessarily relevant to the claims made by defendants seeking release due to COVID-19 concerns.

The Court understands that there are reasons that Defendant's counsel may not wish to conduct in person visits at NSDC, but those same reasons would apply to in person visits if he was released. Plus, if he was released, he would not likely have access to video conferencing. The Court also has no evidence that Defendant is being deprived of unmonitored telephone calls with his counsel. Considering all these circumstances, this Court does not find that Defendant's temporary release is necessary to prepare his defense. Therefore, this factor also weighs against temporary release.

## IV. CONCLUSION

Defendant has not met his burden of demonstrating a compelling reason that would justify temporary release, or that the circumstances necessitate temporary release for preparation of his defense. The Court also finds that the original detention decision is supported and no circumstances warrant temporary release under the Fifth or Eighth Amendments.

**IT IS THEREFORE ORDERED** that Defendant Laquan McDonald's Emergency Motion for Temporary Release Under 18 U.S.C. § 3142(i) Due to COVID-19 Pandemic (ECF No. 22) is **denied**.

DATED: April 3, 2020

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE